**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X

UNITED STATES OF AMERICA,

             - against -

DEREK TURNER,

                          Defendant.

---------------------------------------------------------------X

                                     **MEMORANDUM**
                                     **AND ORDER**

                                   M 05-504 (MLO)

**JAMES ORENSTEIN, Magistrate Judge:**

      I write *sua sponte* to set forth the reasons for certain rulings I have made to date in this case and to address what will likely be recurring issues involving the statutory rights of crime victims pursuant to 18 U.S.C. § 3771. In addition, for the reasons set forth below, I now direct the government to provide the court with sufficient information about the victims in this case to fulfill its independent obligation to ensure that those victims are afforded their rights. That information must include the name and contact information for each victim, or victim's surrogate or lawful representative, but may exclude information about any victim who has waived the right to receive notification from the court. The information must be filed on the public docket, but may be submitted under seal and *ex parte* to the extent that such exceptions to the pubic filing requirement are supported by good cause. Further, in light of the novelty of this issue, I will stay the order requiring the filing of this information for one month to allow any party or victim (including any victim who wishes to proceed under a pseudonym) to object to this order or to suggest an alternate procedure.

I.     Background

    A.     The Proceedings In This Case

    On April 15, 2005, the government filed a complaint accusing Turner of using the mail to

engage in a fraudulent scheme in violation of 18 U.S.C. § 1341.  In particular, the complaint

alleged that Turner had induced two individuals, identified thus far only as "John Doe #1" and

"John Doe #2," to invest large sums of money in what proved to be a bogus private consolidated

deposit fund, the return of which they were later unable to secure.  Docket Entry ("DE") 1 ¶¶ 2-7,

10.  On the basis of that complaint, the Honorable Michael L. Orenstein, Chief United States

Magistrate Judge, issued a warrant for Turner's arrest. DE 2.

    Three days later, the government arrested Turner and brought him before me for his

initial appearance pursuant to Rule 5 of the Federal Rules of Criminal Procedure.  DE 3.  At that

appearance, the parties agreed to the adjournment of the detention hearing and the entry of a

temporary order of detention pursuant to 18 U.S.C. § 3142(f).  DE 5.  I neglected at that time to

inquire of the government whether, and to what extent, it had identified alleged victims of the

charged offense and notified them of their statutory rights.

    At the detention hearing on April 21, 2005, *see* DE 6, I did inquire, and learned that the

government has made the John Doe victims generally aware of the progress of its investigation

but had not given them specific, timely notice of either the initial appearance or the adjourned

detention hearing.  The prosecutor went on to advise that there are other similarly situated

individuals not mentioned in the complaint whom the government characterizes as victims of

Turner's alleged offense and who likewise had not been given specific notice of the proceedings.

At the conclusion of the hearing, I found that no condition or combination of conditions would reasonably assure Turner's appearance as required, and therefore entered a permanent order of detention pending trial. DE 7; *see* 18 U.S.C. § 3142(e). I did so with Turner's consent, and with the explicit understanding that the finding was subject to reconsideration once he secured a package of potential sureties for me to present at the next scheduled hearing on April 26, 2005. In light of the pendency of further bail-related proceedings, pursuant to my affirmative obligation to ensure that crime victims are afforded their rights, *see* 18 U.S.C. § 3771(b), and as a remedy for the earlier failure to afford those rights, I directed the government to provide all alleged victims of the charged offense a written summary (if not a transcript) of the proceedings to date as well as notification of their rights under the statute with respect to future proceedings, including notice of the next scheduled proceeding and of their right to be heard with respect to Turner's application for release. I also alerted the parties' counsel that I intended to address in writing the effect of § 3771 on these proceedings, and permitted – but did not require – either side to submit a brief on the matter. Neither party has done so to date.

At the next appearance on April 26, 2005, *see* DE 9, I inquired as to the government's compliance with my earlier order regarding victim notification. The prosecutor reported that each alleged victim of the charged offense had been notified of the proceeding and that none had elected to attend and be heard with respect to Turner's application for release. Believing that colloquy to satisfy my obligation to ensure that victims were afforded their rights, I made no further inquiry and proceeded to hear arguments and proffers of facts with respect to the substantive issue before me, after which I denied Turner's application for release.

The parties' counsel thereupon informed me at a sidebar conference that they were considering submitting a joint request to exclude a period of delay in computing the time within which an indictment must be filed pursuant to 18 U.S.C. § 3161(h)(8), and inquired as to the procedure for doing so. I noted that such a joint request, if made in a public proceeding might also implicate victims' statutory rights, *see* 18 U.S.C. § 3771(a)(2) & (7), and should therefore be done on notice to any alleged victim in the case, but that I would not require such notification if, as is occasionally the practice in this district, the parties simply submitted a written waiver formed signed by counsel and the defendant to be so ordered by the court. On April 29, 2004, the parties' submitted a written waiver and I signed an order approving the waiver. DE 11.

B. <u>The Crime Victims Rights Act</u>

On October 30, 2004, the President signed into law the Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act ("CVRA"), as title I of the Justice For All Act of 2004, Pub. L. 108-405. The CVRA is only the most recent of several statutory protections for crime victims enacted in the quarter-century since President Reagan's Task Force on Victims of Crime issued a report demonstrating that courts, prosecutors and law enforcement officers too often ignored or too easily dismissed the legitimate interests of crime victims.[1] The CVRA confers eight specific rights on crime victims, several of which affect the instant proceedings. Specifically, a crime victim has the following rights:

---

[1] *See* President's Task Force on Victims of Crime, Final Report (Dec. 1982), available at http://www.ojp.usdoj.gov/ovc/publications/presdntstskforcrprt/welcome.html; U.S. Department of Justice, Attorney General Guidelines for Victim and Witness Assistance (2000), available at http://www.ojp.usdoj.gov/ovc/publications/infores/agg2000/agguidel.pdf ("AG Guidelines"), App. D (listing statutes).

(1) The right to be reasonably protected from the accused.

(2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.

(3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.

(4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

(5) The reasonable right to confer with the attorney for the Government in the case.

(6) The right to full and timely restitution as provided in law.

(7) The right to proceedings free from unreasonable delay.

(8) The right to be treated with fairness and with respect for the victim's dignity and privacy.

18 U.S.C. § 3771(a). Several of these specific rights were already part of federal law as the result of previous legislative efforts to improve the treatment of victims in the criminal justice system. *See* 42 U.S.C. § 10606(b). But unlike previous reforms, the CVRA gives crime victims direct standing to vindicate their procedural and substantive rights in criminal cases independently of prosecutors, *see* 18 U.S.C. § 3771(d),[2] and also imposes on the judiciary an affirmative obligation to "ensure" that those rights are "afforded." *Id*. § 3771(b)).

---

[2] *See* H.R. Rep. 108-711, 2005 U.S.C.C.A.N. 2274, 2277 (rights conferred by CVRA largely already existed in Title 42 of the United States Code, but without any independent enforcement mechanism); *cf. United States v. McVeigh*, 106 F.3d 325, 334-35 (10th Cir. 1997) (victims lacked independent standing under 1990 statute to challenge sequestration order).

II.     Discussion

The complaint in the instant case alleges the existence of two individuals, whose names the government has thus far withheld from public disclosure, who sustained economic harm as a result of the offense charged against the defendant.  To date, no victim has appeared and no person has sought to assert the rights of any potential victim.  Nevertheless, given the statute's mandate that courts ensure that victims are afforded their rights, I must consider whether the CVRA requires any particular action at each stage of the proceedings despite the absence of any application.  The circumstances also call upon me to determine the extent to which the CVRA applies to the specific individuals described in the complaint and possibly others, as well as the extent to which it applies to the specific proceedings to date, namely, the initial appearance and bail hearings, and the written waiver pursuant to the Speedy Trial Act.  I address each matter in turn.[3]

A.      The Court's Obligations Under The CVRA

1.      Cases Covered By The CVRA

Courts are required to ensure that crime victims are afforded their rights in "any court proceeding involving an offense against a crime victim."  18 U.S.C. § 3771(b).  Although the term "involving" raises interpretive issues that courts may have to resolve in future cases, its core meaning unquestionably encompasses the circumstances of this case.  The phrase "an offense

_____

[3]  The following analysis is informed not only by the relatively sparse legislative history of the CVRA, but also by the longer history of a predecessor proposal to enshrine victims' rights in the United States Constitution.  As the statute's sponsors acknowledged, the CVRA was enacted as a compromise only after it became clear, following years of debate, that there was insufficient support in the United States Senate for the proposed constitutional amendment.  *See*, *e.g.*, 150 Cong. Rec. S4260-01 (Apr. 22, 2004) ("Senate Debate") at S4261 (Statement of Sen. Feinstein).

*against* a crime victim" could be likewise be read to effect what I believe would be an unintended narrowing of the statute's reach, but only in circumstances that do not obtain here. If the allegations in the complaint are true, Turner unquestionably committed mail fraud "against" John Doe #1 and John Doe #2, each of whom can properly be considered "the crime victim" in this case. As a result, I have no doubt that the CVRA applies to the proceedings to date in this case.

     2.     The Duty To "Ensure" That Crime Victims Are "Afforded" Their Rights

Section 3771 grants specific rights to crime victims in subsection (a), and specifies in subsection (d)(3) the procedures by which victims can assert those rights in court and obtain judicial determination of such claims. No further statutory mandate would have been needed if all that Congress intended was to have judges rule on applications by aggrieved crime victims. But the statute also requires courts, in subsection (b), to "ensure that the crime victim is afforded the rights described in subsection (a)." In order to give that provision separate meaning, courts must interpret it to require something more than merely ruling on applications for relief made pursuant to subsection (d)(3). Accordingly, I believe the provision requires at least some proactive procedure designed to ensure victims' rights.

While some proactive steps seem to be required, the statute just as clearly does not, in most circumstances, require courts to adopt every conceivable procedure that might protect the exercise of victims' rights. Specifically, it is only with respect to orders denying a victim's right to attend court proceedings that judges are directed to "make every effort" to find reasonable alternatives to exclusion. 18 U.S.C. § 3771(b). There is a lot of ground between extending some effort to "ensure" that victims are afforded their rights and making "every effort" to do so. In

particular, I have identified two different models for ensuring compliance with the statute, either of which would represent a plausible interpretation of the statute.

First, given the passive phrasing of the requirement to ensure that "the crime victim is *afforded* the rights described in subsection (a)," courts could conceivably do no more than inquire of prosecutors whether they have afforded victims their statutory rights. While this might suffice with respect to several of the rights, the approach seems inconsistent with the apparent legislative intent to allow victims to vindicate their rights independent of prosecutors. Moreover, with respect to at least some of the rights (such as the right to be heard), such an inquiry of prosecutors would be a *non sequitur*.

The second approach is to take affirmative steps directed to the victims themselves. As discussed in greater detail below, the court must to some extent rely on prosecutors to identify the victims who have rights in a given case. But that is not the only means of identification, and this more proactive second approach would require courts to provide an avenue for victims to identify themselves directly, and, once so identified, by whatever means, to do more than simply rely on the prosecutor to provide notice of court proceedings by taking steps to provide such notice itself.

Some such systematic approach to the implementation of the CVRA may be inevitable,[4] but it is also, of course, beyond my authority. What I can do in the interim is to take a case-by-case approach to complying with the new statute's mandate. In this case, I believe such

---

[4] *See* Statement of Paul G. Cassell Before The United States Sentencing Commission at 44, available at http://www.ussc.gov/hearings/02_15_05/cassell_testimony.pdf (Fed. 15, 2005) ("it seems likely that the [CVRA] will require significant changes in the Federal Rules of Criminal Procedure. I am currently in the process of preparing suggestions for the Advisory Committee on Rules of Criminal Procedure as to how this might be accomplished.").

compliance requires the colloquy I neglected to conduct at the initial appearance but did conduct at subsequent proceedings: namely, asking the prosecutor whether victims had been notified of the proceeding and directing notification with respect to future proceedings.

When it became apparent that the alleged victims here had not been given specific notice of the first two proceedings, I considered an adjournment as an alternative to further proceedings in violation of the victim's rights. Another alternative, and one that I concluded was preferable under the circumstances, was to order the government to provide a written summary or transcript of the proceedings to any victim who was denied notice and to make it clear that I would hear any victim with respect to whether the decision I made in the victim's absence should be reconsidered. I do not endorse this alternative as a routine substitute for conducting such proceedings without notice to victims – the statute plainly forbids such an approach. But where, as here, the result of a proceeding conducted in the victims' absence is one that does not appear to jeopardize any substantive (as opposed to procedural) right of the victim, the relief I ordered here seemed preferable to an order that would require further incarceration of a criminal defendant without a substantive ruling on whether there exist conditions of release that satisfy the requirements of the Bail Reform Act. The result at the proceeding on April 26, 2005 – at which the prosecutor reported, after complying with my earlier directive, that no victim wished to be heard – suggests that such relief sufficed to satisfy the victims without requiring further delay or inconvenience for the parties.

3.    Explaining And Reporting Denials Of Victims' Rights

The CVRA explicitly requires that "[t]he reasons for any decision denying relief under this chapter shall be clearly stated on the record."  18 U.S.C. § 3771(b).  Although not codified as part of § 3771, the CVRA also includes a requirement that the Administrative Office of the United States Courts report annually to Congress, on a court-by-court basis, "the number of times that a right established in chapter 237 of title 18, United States Code, is asserted in a criminal case and the relief requested is denied and, with respect to each such denial, the reason for such denial, as well as the number of times a mandamus action is brought pursuant to chapter 237 of title 18, and the result reached."  Pub. L. 108-405, § 104(a).[5]

This memorandum obviously serves to explain why I have proceeded as I have with respect to the enforcement of victims' rights in this case.  However, I do not mean by this writing to suggest that the statute requires a similar explanation every time a court proceeds with a hearing in a victim's absence.  Nor do I mean to suggest that this case falls within the category that must be included in the Administrative Office's annual report to Congress.  None of my actions in this case was a "decision denying relief" under the CVRA sufficient to trigger either requirement.  There were deprivations of victims' rights, in the sense that the victims were not

_____

[5]  It does not appear that the CVRA requires reporting of all denials of assertions of victims' rights, but rather only those following the denial of a request for relief.  There will be many occasions when a judge in some sense "asserts" a victim's rights – for example, by determining, as I have done here, that the victim has a right to notification that has not been vindicated. Proceeding in the victim's absence may well constitute a deprivation of the victim's rights, but does not appear to fall within the reporting requirement.  Likewise, the denial of a defendant's request for relief predicated on an assertion of a victim's statutory rights – a result compelled by the statute itself, *see* 18 U.S.C. § 3771(d)(1) – does not appear to fall within the reporting requirement, despite the fact that such a denial arguably falls within the strict meaning of the statutory text.

given notice of the initial appearance and the first detention hearing. Those deprivations occurred before the start of each proceeding, and going forward in the victims' absence was neither a new violation nor the denial of any relief that had been requested. Nevertheless, even if the circumstances of this case do not require an explanation by virtue of a statutory mandate, that fact neither warrants repetition in the future of such deprivations of rights nor counsels against judges making a record of their reasons for adopting certain procedures in response to the new law. As litigants and courts become more familiar with the CVRA, the cases in which victims are deprived of notice will likely become the exception rather than the norm, and courts will have fewer occasions to decide how to proceed in the absence of notification. But in the meantime, making such a record as a matter of discretion can only help to clarify the law's requirements.[6]

B.    Identifying Victims In A Criminal Case

1.    The Presumption Of Innocence

The CVRA defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e). At this stage of the case, however, the defendant continues to enjoy a presumption that he is innocent of the charge that he committed a Federal offense. Strictly speaking, then, I might be constrained to presume that there is no person who meets the

---

[6] Moreover, the more clearly courts explain their applications of the CVRA, the more accurately Congress will be able to assess the judiciary's application of the statute when it reviews the efficacy of the CVRA after four years and decides whether the statutory alternative to a constitutional amendment is sufficient to achieve the goals of the proposed amendment's sponsors. *See* Pub. L. 108-405, § 104(b) (directing the Comptroller General of the General Accountability Office to "conduct a study that evaluates the effect and efficacy of the implementation of the amendments made by this title on the treatment of crime victims in the Federal system" and to provide a report of that study to Congress by October 30, 2008).

definition of "crime victim" in this case. That syllogism – which renders the CVRA inapplicable to this or any other criminal case unless and until the defendant is proved guilty beyond a reasonable doubt – produces an absurd result that I must presume Congress did not intend. Nevertheless, I cannot ignore the possibility that by requiring me to afford rights to "crime victims" in this case, the CVRA may impermissibly infringe upon the presumption of Turner's innocence.

Unlike the Bail Reform Act, the CVRA does not include a provision expressly preserving the presumption of the accused defendant's innocence. *Cf.* 18 U.S.C. § 3142(j). I conclude, however, that such a reasonable limitation must be inferred as a matter of due process and to avoid an interpretation that would render the statute unconstitutional. *See*, *e.g.*, *I.N.S. v. St. Cyr*, 533 U.S. 289, 299-300 (2001) ("if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' [citation omitted] we are obligated to construe the statute to avoid such problems"). Accordingly, I interpret the definition in § 3771(e) to include any person who would be considered a "crime victim" if the government were to establish the truth of the factual allegations in its charging instrument.

### 2. The Scope Of The Class Of Crime Victims

While the offense charged against a defendant can serve as a basis for identifying a "crime victim" as defined in the CVRA, the class of victims with statutory rights may well be broader. Specifically, courts must decide whether the CVRA accords rights to persons harmed by any *uncharged* criminal conduct attributed to the defendant. In this case, for example, before deciding to proceed despite the lack of victim notification, I had to consider whether there might

be individuals other than John Doe #1 and John Doe #2 who would be entitled to notice and other participatory rights by virtue of the fact that they too invested in Turner's allegedly fraudulent scheme. At the proceeding on April 21, 2005, the government stated that there are such persons without further elaboration. Moreover, as the case progresses, the government may make additional allegations about Turner's conduct that, although not the basis for additional charges, indicate that there are others who have been harmed by the conduct alleged.

In this regard, the usual methods of determining legislative intent produce inconsistent results. The law's sponsors explicitly advocated such a broad reading of the statute in the Senate floor debate. As Senator Kyl explained, subsection (e) employs "an intentionally broad definition because all victims of crime deserve to have their rights protected, *whether or not they are the victim of the count charged*." Senate Debate at S4270 (statement of Sen. Kyl) (emphasis added); *id*. (statement of Sen. Feinstein agreeing with same). On the other hand, the full Congress passed the bill knowing that similar language in an earlier victims' rights bill had been interpreted *not* to refer to uncharged conduct. In *Hughey v. United States*, 495 U.S. 411 (1990), the Supreme Court held that the 1982 Victim Witness Protection Act, 18 U.S.C. § 3663(a)(2), authorizes restitution only for loss caused by the specific conduct which forms the basis for the offense of conviction. Since the statute at issue in *Hughey* and the CVRA use similar definitions of "victim,"[7] it appears that the same reasoning would exclude victims of uncharged conduct from the class of those entitled to participatory rights under the new law. The latter view is bolstered by the House report on the CVRA, which explicitly noted that 18 U.S.C. § 3771(a)(6)

---

[7] The definition in § 3771(e) is taken almost verbatim from the 1996 Mandatory Victims Restitution Act, codified at 18 U.S.C. § 3663A(a)(2), which in turn is derived from the 1982 Victim Witness Protection Act, codified at 18 U.S.C. § 3663(a)(2).

"makes no changes in the law with respect to victims' ability to get restitution."  H.R. Rep. 108-711, 2005 U.S.C.C.A.N. 2274, 2283 (Sep. 30, 2004).

Of course, the fact that the CVRA may not mandate giving notice and participatory opportunities to such victims does not prohibit a court from doing so.  Weighing the explicit view of the law's sponsors against the inference to be drawn from pre-existing case law, courts should consider erring on the side of caution.  Nevertheless, there are obvious practical difficulties to doing so in this context:  in particular, a court has no independent means of identifying the victim of uncharged conduct, and must rely on the government, or the victims of such alleged conduct themselves, to bring their status to the court's attention.  Moreover, unlike conduct placed at issue in an indictment or complaint, allegations of uncharged conduct will not have been tested even against the relatively low standard of probable cause, thereby exacerbating the due process problem inherent in designating a person as the defendant's "victim."

Accordingly, I believe it is important to avoid the pitfall of seeking to determine who is "actually" a victim, *cf*. Fed. R. Crim. P. 32(a)(2), as a threshold for safeguarding the rights set forth in § 3771.[8]  Instead, I have taken and will continue to follow an inclusive approach:  absent an affirmative reason to think otherwise, I will presume that any person whom the government asserts was harmed by conduct attributed to a defendant, as well as any person who self-identifies as such, enjoys all of the procedural and substantive rights set forth in § 3771.  As discussed below, translating that presumption into concrete action presents practical difficulties.

---

[8]  This approach does not preclude the possibility that in unusual circumstances, affording a crime victim his statutory rights will threaten to undermine the constitutional rights of the accused.  It means only that the issue should not be avoided by excluding an otherwise eligible person from the statutory class of crime victims.

3.      Victim Identification And Notification

This case highlights some of the difficulties in implementing the CVRA's notification requirements. To date the only information before the court as to the existence of individual victims is the complaint's reference to two John Does and the prosecutor's oral assertions regarding the existence of an unspecified number of similarly situated other individuals. I assume that all of those persons have rights under the CVRA. Some of them may want or need to have others exercise those rights on their behalf, and as discussed below, the statute makes provision for that possibility. If there are many persons with statutory rights, it may prove impractical for all of them to exercise the right to be heard, and here again the statute makes provision for that possibility. It is also possible that some members of the victim class have no desire either to participate or to continue receiving notification of each proceeding, and I must consider how that possibility affects the government's obligations and the court's.

a.      Providing Victim Information To The Court

Notwithstanding the fact that I have an obligation under the statute to assure that each victim is afforded his statutory rights in the absence of an effective waiver, lacking more information about who those victims are there is little I can do other than to direct the prosecutor to provide notification. In suggesting that the latter is not a fully satisfactory result as a matter of course, I ascribe to the government neither an unwillingness nor an inability to fulfill its obligations. Rather, my concern is that reliance on the prosecutors appears to be inconsistent with the legislative agenda, as reflected by the fact Congress has passed a new law that differs from a previous statute not in the substance of the rights it creates but in its grant of independent standing to crime victims and its requirement that courts "ensure" that the rights are afforded.

Accordingly, in the absence of any national or local rule of criminal procedure requiring prosecutors to provide such information in every case, *cf.* Fed. R. Crim. P. 12.4 (requiring disclosures with respect to organizational victims), and with important qualifications discussed below, I now direct the government in this case to file with the court a list setting forth the name of (and contact information for) each individual it has identified as a victim of Turner's alleged crime, including any person whom it characterizes as the victim of uncharged conduct, or to show good cause why it should not be required to do so.

Having such information will allow the court to fulfill its independent obligation to ensure that victims are afforded their rights. Further, the requirement to file such a list should not place an undue burden on the government. As the prosecutor informed me at the hearing on April 21, 2005, the United States Attorney in this district is already providing training to her assistants on how to comply with the CVRA, and it is my understanding that her office has already adopted procedures that require the collection of such data in each case. The practice in this district mirrors the government's broader practice across the nation: the prosecutor further informed me at the hearing on April 21, 2005, that the Department of Justice is preparing regulations to implement the CVRA,[9] and even before that statute's enactment, the Department had promulgated guidelines mandating the identification of crime victims at the investigative stage as required by earlier law. *See* AG Guidelines, § IV.A.2 (citing 42 U.S.C. § 10607(b)(1)).

Although requiring the government to file a list of victims does not, for the reasons described above, appear to impose a burden the government does not already bear, it may

---

[9] The CVRA requires the Department to do so, and specifically requires that those new regulations make a prosecutor's failure to comply with victims' rights laws the basis for possible disciplinary sanctions up to and including termination. 18 U.S.C. § 3771(f)(2)(C).

engender some serious risks to others. Most obviously, the filing of such a list invades the privacy of victims who have no authority to prevent the government from proceeding with a prosecution and who should not be victimized by the criminal justice process itself. The fact that the complaint in this case uses pseudonyms to refer to victims strongly suggests that such a concern may be present here. The government chooses to be a litigant in each case it prosecutes, and the defendant is permissibly forced into that role upon a showing of probable cause. But individuals covered by the CVRA have done nothing that warrants unwanted intrusion into their lives, and they may have good reason either to be concerned about the public listing of their names and contact information or simply to prefer not to be reminded of their victimization each time the court schedules a proceeding. I must therefore balance the court's independent obligation to ensure that victims are afforded their rights against the possibility that doing so in a mechanical fashion will do more harm than good.

In addition to risking unwarranted intrusions on a victim's privacy, such a filing requirement – and more to the point, the notification requirement itself – can impose a burden on the government without producing any benefit that a victim might be interested in having. Because of the statute's broad sweep, there may well be persons and entities entitled to notification and participation who neither expect nor particularly want to be involved in the criminal justice process, the traditional focus of which has traditionally been to resolve disputes between the government and an accused offender. The statute's text, which creates a new formal role for the victim in that process, does not authorize either a prosecutor or a judge to make a determination on the victim's behalf that the exercise of participatory rights is unimportant in a given case. Nevertheless, the efficient administration of criminal justice is promoted if courts, in

giving effect to the statute, provide a mechanism allowing for an early determination that a victim affirmatively wishes to waive her statutory rights to notification and participation.

For those reasons, my direction to the government allows for a showing of good cause why some or all of the required information should not be provided. In that regard, I will consider as good cause either (1) a showing that a victim has reason to fear public disclosure of identifying information, which would justify making the filing under seal and possibly *ex parte*; or (2) a showing that a victim has made a knowing waiver of rights under the CVRA, which would justify making no filing at all with respect to that victim.

b.    <u>Persons Other Than Actual Victims</u>

As explained below, the CVRA makes two separate references to individuals or groups who, although not directly and proximately harmed by a crime, can nevertheless assert the statutory rights of a person who was so harmed. In accepting the government's representation that it had notified all victims of Turner's alleged misconduct, I did not ask whether that notification included such persons. To ensure that the record is clear in this regard, as part of its compliance with the directive to provide victim information to the court, the government must include such others in its filing with respect to any victim who requires a surrogate pursuant to the terms of the statute or who has designated a lawful representative.

Where the actual victim is deceased, a minor, incompetent, or incapacitated, "the legal guardians of the crime victim or the representatives of the crime victim's estate, family members, or any other persons appointed as suitable by the court, may assume the crime victim's rights under this chapter." 18 U.S.C. § 3771(e). This provision appears to mean that where a surrogate is required and one is available, that person will automatically "assume the crime victim's rights"

18

without the need for any action by the court.  It is only where no such person can be identified –

or, presumably, where any such person is unwilling or unable to assume that role – that a court

need consider appointing a suitable surrogate.[10]

Even absent the need for a surrogate, a victim may obtain assistance from others in

asserting her rights.  The CVRA provides, "The crime victim *or the crime victim's lawful*

*representative* ... may assert the rights described in subsection (a)."  18 U.S.C. § 3771(d)(1)

(emphasis added).  The only explanation of this phrase in the statute's legislative history refers to

a victim's discretion to retain counsel.  *See* Senate Debate at S4269 (statement of Sen. Kyl).

However, the Judiciary Committee's report on a parallel provision in the proposed constitutional

amendment plainly suggests that the term means something more:

> There will be circumstances in which victims find it desirable to have a
> representative assert their rights or make statements on their behalf. This
> provision recognizes the right of a competent victim to choose a representative to
> exercise his or her rights, as provided by law. Typically victims' rights statutes
> have provided a means through which victims can select their representatives
> without great difficulty.
>
> *Other* "lawful representatives" will exist in the context of victims who are
> deceased, are children, or are otherwise incapacitated. In homicide cases, victim's
> rights can be asserted by surviving family members or other persons found to be
> appropriate by the court. This is the approach that has uniformly been adopted in
> victims' rights statutes applicable in homicide cases, thus ensuring that in this
> most serious of crimes a voice for a victim continues to be heard. Of course, in

---

[10]  The statute could arguably be read differently, to require judicial appointment of a family
member, guardian or administrator as the victim's surrogate before any such person could assume
the victim's rights.  While I am unaware of any legislative history that would help resolve this
specific interpretive issue, my overall reading of that history – and even more, my reading of the
history of the predecessor proposal for a constitutional amendment – is that Congress sought to
confer autonomy on victims rather than make them dependent on prosecutors and judges for the
vindication of their interests.  For this reason, as well as because the provision's syntax does not
favor the broader reading discussed in this note, I believe the interpretation set forth in the text
above is the better reading of the statute.

such cases the "lawful representative" would not necessarily be someone who was the executor of the estate, but rather someone involved in issues pertaining to the criminal justice process. In cases involving child victims, a parent, guardian or other appropriate representative can do the same. For victims who are physically or mentally unable to assert their rights, an appropriate representative can assert the rights.

In all circumstances involving a "representative," care must be taken to ensure that the "representative" truly reflects the interests-and only the interests-of the victim. In particular, in no circumstances should the representative be criminally involved in the crime against the victim. The mechanics for dealing with such issues and, more generally, for the designation of "lawful" representatives will be provided by law-that is, by statute in relevant jurisdiction, or in its absence by court rule or decision.

S. Rep. 108-191 at 43 (emphasis added).

As the Senate report suggests, the potential pitfall with this provision is the possibility that the "lawful representative" may have an agenda beyond the interests of the specific victim he represents. Further, it is clear that in the context of the proposed amendment, the term "lawful representative" included the class of persons described above as victims' surrogates pursuant to 18 U.S.C. § 3771(e). Finally, the discussion of victims' "lawful representatives" in the context of earlier victims' rights statutes and the reference to a victim's right to designate a representative "as provided by law" suggests that the "lawful representative" provision of the CVRA is to be interpreted in light of subsection (e). In other words, a "representative" can only be considered "lawful" within the meaning of subsection (d)(1) if he falls within the class of surrogates authorized by subsection (e). To the extent that a court may find that such a surrogate does not fully represent the victim's interests, or has an additional agenda he seeks to advance by means of asserting the victim's rights, the court appears to have the authority to determine that the

surrogate is not a "suitable" person to assume the victim's rights pursuant to subsection (e), and therefore lacks standing to assert the victim's rights pursuant to subsection (d)(1).[11]

What the preceding discussion leaves unresolved is whether a victim who is otherwise competent to assert her own rights – and therefore does not fall within the surrogacy provision of subsection (e) – can nevertheless appoint a "lawful representative" (other than counsel) to act in her stead.[12]  Both the language of the statute and the history of the predecessor amendment proposal strongly suggest that the victim does have the right to appoint such a non-lawyer representative and that the right to make such an appointment is limited, if at all, by the court's authority to determine whether a surrogate is "suitable."

To summarize, I am directing the government to provide the court with sufficient information about the victims in this case to fulfill its independent obligation to ensure that those victims are afforded their rights.  That information must include the name and contact information for each victim, or victim's surrogate or lawful representative, but may exclude information about any victim who has waived the right to receive notification from the court. The information must be filed on the public docket, but may be submitted under seal and *ex parte* to the extent that such exceptions to the pubic filing requirement are supported by good cause. Further, in light of the novelty of this issue, I will stay the order requiring the filing of this

---

[11]  This harmonization of subsections (d)(1) and (e) is consistent with the view that the court's power to appoint a surrogate or "lawful representative" neither requires nor even authorizes a court to appoint counsel for an indigent crime victim.  *See* Senate Debate at S4268 (statement of Sen. Kyl).

[12]  Of course, nothing in the statute prevents a victim or her lawful representative from being represented by counsel in asserting her statutory rights in a court proceeding.

information for one month to allow any party or victim (including any victim who wishes to proceed under a pseudonym) to object to this order or to suggest an alternate procedure.

C.  Crime Victims' Substantive Rights Under The CVRA

The preceding discussion addresses the extent to which the CVRA applies to this case and the nature of the class of persons to whom its protections apply, but does not address the substance of a crime victim's rights under the statute.  As the following discussion explains, the proceedings to date in this case – the defendant's initial appearance, the detention hearings pursuant to the Bail Reform Act, and the written waiver of speedy trial time – all implicate, directly or indirectly, most of the statutory rights that the CVRA confers on crime victims.  As discussed below, many of those rights overlap with pre-existing law.  In considering how to ensure those rights are afforded, I am cognizant that the new law gives crime victims a voice but not a veto.  Of particular relevance to this case, a court's obligation to protect a victim's rights and to consider carefully any objections that victim may have never requires it to deny a defendant release on conditions that will adequately assure the defendant's appearance as required and the safety of others.  *See* S. Rep. 108-191 at 26, 36, 37 (explanation by Senate Judiciary Committee in report on proposed constitutional amendment that the right to be heard does not give victims a veto over the matters to which they may speak).  I thus turn to an examination of the potential impact of each substantive right in the CVRA on the proceedings before me in this case.

*"The right to be reasonably protected from the accused."*  18 U.S.C. § 3771(a)(1). Regardless of what this right might entail outside the bail context, it appears to add no new substance to the protection of crime victims afforded by the Bail Reform Act, which already allows a court to order reasonable conditions of release or the detention of an accused defendant

to "assure ... the safety of any other person." 18 U.S.C. § 3142(c)(1). Other participatory rights in the CVRA give the victim standing to be heard independent of any presentation the prosecutor might make, but those rights do not appear to change the substantive bases on which a defendant can be released or detained.

*"The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused."* 18 U.S.C. § 3771(a)(2). As discussed above, this right raises particularly challenging interpretive questions at the beginning of a criminal case, when the court has the least information about any victims and when the defendant's arrest triggers an obligation to commence proceedings promptly. Each of the three adjectives – "reasonable, accurate, and timely" – is important: "reasonable" provides vital flexibility; "accurate" may well impose an affirmative obligation to advise victims of schedule changes (most states have similar statutory requirements); and "timely" is designed to be a flexible concept that ensures a victim can reasonably arrange her affairs to attend the proceeding for which notice is given. *See* Senate Debate at S4268 (statement of Sen. Kyl).

*"The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding."* 18 U.S.C. § 3771(a)(3). This right effectively trumps Federal Rule of Evidence 615, and in doing so broadens a 1997 statute, 18 U.S.C. § 3510, that was enacted in response to the trial court's exclusion of victims from the proceedings in the Oklahoma City bombing case on the ground that they might give victim impact testimony at a penalty phase. As such, this right has no

immediately apparent impact on the proceedings to date in this case. However, the phrasing of this provision does have important implications for all proceedings in a criminal case: the right is phrased in the negative (*i.e.*, the crime victim has the right "not to be excluded") rather than as an affirmative right to attend. This is to guard against arguments that the government has some affirmative duty to make it possible for indigent or incarcerated victims to be present in the courtroom. *See* Senate Debate at S4268 (statement of Sen. Feinstein). The negative phrasing also suggests that the fact that a properly notified victim cannot be present is not in itself a circumstance that requires a proceeding to be adjourned. Essentially, a judge conducting a public proceeding involving a crime may not close the courtroom door to a crime victim who seeks entry but has no obligation to ensure the victim actually arrives there.

*"The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding."* 18 U.S.C. § 3771(a)(4). This right has some important textual limitations but I need not opine on their effect for purposes of the instant case. The initial appearance and detention hearings in this case were all unquestionably "public proceeding[s] in the district court involving release" and therefore implicated the right of any victim of the charged offense to be heard. To the extent any properly notified victim would have wanted to exercise that right, the statute would have required the victim to be given an opportunity actually to be "heard" rather than afforded some alternate means of communicating her views. "Indeed, the very purpose of this section is to allow the victim to appear personally and directly address the court. This section would fail in its intent if courts determined that written, rather than oral communication, could generally satisfy this right." Senate Debate at S4268 (statement of Sen. Kyl).

To date, no victim has appeared, and therefore I have not had to consider any limitations on the victims' right to be heard. But the potential need for such limitations clearly exists in a case such as this where – as is often the case when a defendant is charged with defrauding investors in a financial scheme – the government reports that there are multiple victims. In such cases, the CVRA explicitly provides for appropriate flexibility, but only upon a finding of need: "In a case where the court finds that the number of crime victims makes it impracticable to accord all of the crime victims the rights described in subsection (a), the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings." 18 U.S.C. § 3771(d)(2). The potential applicability of this provision to this case further demonstrates the need for courts to obtain information about victims from prosecutors as early as possible in a case. The sooner a court knows whether there are more victims who wish to assert their rights to notice and participation than can practically be accommodated, the sooner it can consider appropriate procedures to balance the competing interests at stake and the more likely it will be to have input from all interested parties, including the victims themselves, in striking the appropriate balance.[13]

---

[13] The CVRA's reasonable accommodation of such practical concerns appears to be informed by the legislative history of the predecessor proposal to add a victims' rights amendment to the Constitution. In the debates on that proposal, Congress sought to address the tension between victims' interest in ensuring the vitality of their rights by making it difficult to override or restrict them, and countervailing interests based on the need for flexibility in the administration of criminal justice and the historic constitutional rights of the accused. The last version of the proposed amendment to be favorably reported to the Senate addressed this tension by providing that victims' rights "shall not be *denied* ... and may be *restricted* only as provided in this article." S.J. Res. 1, § 1 (108th Cong.) (emphasis added). As several of the legislators who opposed the amendment but later supported the CVRA noted, that formulation resulted in robust victims' rights, but severe limitations on courts' ability to make flexible adjustments when confronted with cases involving multiple victims, victims who might themselves be involved in criminal activities (or allied with such persons), or the unique constitutional issues that arise in capital

*"The reasonable right to confer with the attorney for the Government in the case"* and

*"[t]he right to full and timely restitution as provided in law."* 18 U.S.C. § 3771(a)(5)-(6). These

provisions have no impact that I can discern on the proceedings to date in this case – though of

course it is unlikely that any such impact could ever become apparent without the vindication of

the victims' other procedural rights.

*"The right to proceedings free from unreasonable delay."* 18 U.S.C. § 3771(a)(7). Here

again, this provision appears to add little if anything substantive to existing law – in this case, the

Speedy Trial Act – but does appear to confer participatory rights on the victim.[14] The provision

is a vestige of the earlier proposal to amend the Constitution by providing, in relevant part, that

victims have "the right to adjudicative decisions that duly consider the victim's ... interest in

avoiding unreasonable delay." S. J. Res. 1, § 2 (108th Cong.); *see* S. Rep. 108-191 at 27. The

Senate sponsors of the CVRA were explicit in their view that the statutory right to proceedings

free from unreasonable delay neither "curtail[s] the Government's need for reasonable time to

organize and prosecute its case" nor "infringe[s] on the defendant's due process right to prepare a

defense." *See* Senate Debate at S4268-69 (statement of Sen. Kyl). On the other hand delays for

---

cases. *See* S. Rep. 108-191 at 73-79, 82-86 (minority views). The CVRA plainly strikes a different balance, and it is fair to assume that it does so to accommodate the concerns of such legislators (including the six Senators who voted for the statute after opposing the amendment, one of whom, Senator Leahy, co-sponsored the CVRA). In particular, it lacks the language that prohibits all exceptions and most restrictions on victims' rights, and it includes in several places the term "reasonable" as a limitation on those rights.

[14] To the extent there is some doubt about whether the statute contemplates a participatory right with respect to delays, it arises because the affirmative right to be heard applies with respect to a variety of specified proceedings but not to scheduling matters. *See* 18 U.S.C. § 3771(a)(4). It is for this reason that I advised the parties' counsel on April 26, 2005, that an application to exclude speedy trial time, if made in the context of a proceeding in open court, would require victim notification, but that a written waiver that did not entail any public proceeding would not.

other reasons, particularly "for the mere convenience of the parties," must take into account the victim's countervailing interest in a speedy trial. *Id*. at S4269 (statement of Sen. Kyl).

Under the statute's phrasing – which could be interpreted, by contrast to the proposed constitutional amendment, to grant victims a more robust right to object to delay – a victim could conceivably object to scheduling decisions on the ground that the resulting delay would be unreasonable. In this case, for example, at the initial appearance I adjourned the substantive consideration of the question of Turner's release to allow Turner's counsel to secure the various components of a proposed bail package, and then was prepared to consider such a proposal at the April 21 proceeding notwithstanding the lack of victim notification.[15] Since this case involves no allegations suggesting the defendant engaged in violent conduct, a victim not concerned about personal safety might have objected to the government's request to detain Turner, on the ground that such detention might lead a to a delay of Turner's trial to accommodate the challenges inherent in preparing a defense while incarcerated. On the other hand, had this case involved allegations of violent conduct (which it does not), a victim attending the earlier proceedings might have objected to the relatively brief delays I permitted in the consideration of bail, on the ground that such adjournments would require the victim either to return to court in order to vindicate the right to be heard with respect to the defendant's release or to forego that right and risk a result that would endanger her personal safety.[16] I raise these scenarios not to suggest that

---

[15] In the event, as noted above, substantive consideration was effectively postponed until the renewed application for release on April 26, 2005, by which time all victims had received notification.

[16] I need not and do not speculate here as to whether such an objection would trump the provisions of 18 U.S.C. § 3142(f) that permit a defendant or the government to seek the continuance of a detention hearing that would otherwise presumptively occur at the initial

any absent victim did or should have had any such objection, but only to illustrate the potential pitfalls of proceeding with even such routine matters as initial appearances and bail hearings when victims have not received their rights to timely notification.

8. *"The right to be treated with fairness and with respect for the victim's dignity and privacy."* 18 U.S.C. § 3771(a)(8). Neither the text of the statute nor its legislative history provides guidance as to what specific procedures or substantive relief, if any, Congress intended this provision to require or prohibit. The provision's broad language will undoubtedly lead to litigation over the extent to which courts must police the way victims are treated inside and outside the courtroom. Nevertheless, the Senate sponsors of the law were clear in their articulation of the overall import of the provision: to promote a liberal reading of the statute in favor of interpretations that promote victims' interest in fairness, respect, and dignity. "It is not the intent of this bill that its significance be whittled down or marginalized by the courts or the executive branch. This legislation is meant to correct, not continue, the legacy of the poor treatment of crime victims in the criminal process." *See* Senate Debate at S4269 (statement of Sen. Feinstein). My application of the statute in this case, and in particular the remedial steps I have required to cure past failures of notification and the filing of victim information discussed above is intended to conform to the sponsors' expectation that the statute will be applied liberally to the extent consistent with other law.

     D.     <u>The Effect Of The CVRA On The Specific Proceedings In This Case</u>

---

appearance. Likewise, I do not speculate as to whether the CVRA must be read to give victims a right to obtain an adjournment of a detention hearing, comparable to the right conferred on the parties under the Bail Reform Act, to allow them to prepare for such hearing.

Having discussed the principles I derive from my understanding of the CVRA, I now briefly discuss how those principles apply to the specific proceedings in this case.

### 1. Initial Appearance

A defendant's initial appearance pursuant to Fed. R. Crim. P. 5 is a public proceeding and presumptively includes consideration of whether the accused offender will be released. *See* 18 U.S.C. § 3142(a), (f). Accordingly, victims must be given reasonable, accurate, and timely notice of the proceeding, as well as an opportunity to be heard with respect to bail. Of course, such application of the notice requirement to the initial appearance raises an obvious practical difficulty, in that the defendant is generally required to be brought before the magistrate judge "without unnecessary delay." Fed. R. Crim. P. 5(a)(1). The question is whether it is either "necessary" within the meaning of Rule 5 or "reasonable" within the meaning of § 3771(a)(2) to delay the initial appearance to ensure timely notice to a victim. Answering that question may well require a case-by-case inquiry into the circumstances that might indicate that an absent victim is uniquely able to address the issue of the defendant's release. I had no such indication in this case, and believe that the procedure I followed – proceeding promptly with the initial appearance and (belatedly) requiring the government to notify victims of the result and of their right to request reconsideration of relevant decisions made in their absence – reasonably balances the competing interests at stake.

### 2. Proceedings Under The Bail Reform Act

Throughout the pendency of a criminal case, courts are routinely asked to consider – and often reconsider – issues relating to the defendant's release on conditions. Such issues were taken up at each of the first three proceedings in this case. Part of my concern in ordering

notification was that the information provided to victims be sufficiently specific so that they could make an intelligent decision about whether to attend and seek to be heard. A victim may have little interest in attending a routine scheduling or motion conference, but may have a strong interest in being heard if the terms of the defendants release may be altered, or an order of detention revoked, at such a conference. Accordingly, in addition to requiring notification of the date and time of the most recent proceeding, I sought to ensure that the victims would be told that I would consider Turner's release at that hearing. For similar reasons, I will strive in future proceedings involving bail determinations to make it a routine practice to inquire not only as to whether notice was provided, but also as to whether that notice included reference to the anticipated subject matter.

3.      The Waiver Of Speedy Trial Time

As with issues relating to bail, matters affecting scheduling – including Speedy Trial Act waivers as well as discussions regarding the date of future proceedings – can come up at any time in a prosecution. Such scheduling-related issues were taken up at each of the proceedings to date in this case, and then, on April 29, 2005, I entered, at the parties' joint request, an order of excludable delay pursuant to 18 U.S.C. § 3161(h)(8). When an application for such an order is made, as it was here, by way of a written application, there is no public court proceeding that triggers the victims' rights to notification, even if the statutory right to such notification can and should be read to include proceedings related to scheduling (*but see* n.14 above). If the application is made in a public court proceeding, prudence – and the obvious spirit of the statute if not its letter – counsels in favor of providing notification. In either case, a court's decision to approve the waiver, regardless of the procedure by which it is presented, should take into

30

consideration whether the proposed waiver would result in "unreasonable delay," 18 U.S.C.

§ 3771(a)(7), and I did consider that possibility here.   Although I recognize that I did so without

the benefit of any victim input, I concluded that the brief period of delay the parties proposed –

35 days – would not unduly delay the proceedings and was otherwise warranted in the interest of

justice.

III.    Conclusion

        This is a routine criminal case involving, thus far, an initial appearance on a complaint

and two hearings with respect to the defendant's release.  I write at such inordinate length to

explain my actions for two reasons.  First, the statute's provisions granting victims direct standing

in criminal cases have far-reaching effects that are not yet well understood on the day-to-day

conduct of routine proceedings.  Second, Congress has taken pains to emphasize that a failure by

courts and prosecutors to give effect to this statute may lead to an even more fundamental

reordering of our criminal justice system.

        The decade-long drive to amend the Constitution to explicitly recognize victims' rights

was endorsed by Presidents and Attorneys General of both major political parties and had broad,

bipartisan support in both houses of Congress, in every state, and among victim advocacy

groups.[17]  In the course of many hearings on the proposal, Congress considered not only the

---

[17]  *See* S. Rep. 108-191 at 3-9.  Of course, support for the amendment was hardly unanimous, and even some supporters voiced grave concerns about the specific provisions that were included in the various drafts that Congress considered over the years.  Moreover, crime victims themselves were not monolithic in supporting the idea; some opposed the amendment on the grounds that it was unnecessary, that it might prove harmful to effective law enforcement and therefore counterproductive, and that it might unduly curtail the historic constitutional rights of the accused.  *See id*. at 58, 73, 85 (minority views) (citing testimony of victims of September 11, 2001, terrorist attacks and of the Oklahoma City bombing).

benefits of conferring legal rights on crime victims, but also a number of practical problems that might arise if such rights were set forth in the Constitution – problems that could thereafter only be remedied through yet another constitutional amendment. Ultimately, the amendment's sponsors withdrew the proposal and replaced it with the statutory alternative that is now in effect.

But support for a constitutional amendment did not lapse with the enactment of the CVRA. That support was driven in large part by the frustration of crime victims and their advocates with the failure of government officials at all levels to carry out the mandates of previous statutory reforms. At the Congressional hearings on the proposed amendment, relatives of the individual victims for whom the law is named testified to alarming failures by prosecutors and judges to respect their legitimate interests – interests that were in many cases already protected by existing laws. For some legislators, the lesson of those stories was that only a constitutional amendment will change the way courts and prosecutors act, and that such changes are worth the possibility – which they deemed remote – of unintended adverse consequences to the administration of justice that might ensue. *See*, *e.g.*, S. Rep. 108-191 at 9-44.

Many still feel that way, notwithstanding the enactment of the CVRA, and they have indicated that they will be watching to see how federal courts and prosecutors carry out the new law's mandate. Senator Feinstein warned: "This will be a test, and I, for one, will be watching it closely.... [W]e will see whether the enforcement rights contained in this bill are adequate. If not, you can be sure as the Sun will rise tomorrow, we will be back with a constitutional amendment." Senate Debate at S4263 (statement of Sen. Feinstein); *see also id*. S4266 (statement of Sen. Kyl) ("If it does not work, we will be able to come back and pursue the

constitutional remedy.").[18]  As noted above, Congress provided for such testing by directing the

Comptroller General to report on the statute's success after its first four years in effect.  Pub. L.

108-405, § 104(b).  Such scrutiny, which can only have a salutary effect, suggests the need for

courts to take opportunities such as this one to give searching consideration to the implications of

the new law, even if those implications are not obvious in otherwise routine proceedings such as

those at issue in this case.

For all of the reasons set forth above, I direct the government to provide the court with

sufficient information about the victims in this case to fulfill its independent obligation to ensure

that those victims are afforded their rights.  That information must include the name and contact

information for each victim, or victim's surrogate or lawful representative, but may exclude

information about any victim who has waived the right to receive notification from the court.

The information must be filed on the public docket, but may be submitted under seal and *ex parte*

to the extent that such exceptions to the pubic filing requirement are supported by good cause.

Further, in light of the novelty of this issue, I will stay the order requiring the filing of this

---

[18]  In the same vein, several victims' advocacy groups lauded the enactment of the CVRA but
added a cautionary note:  "The new victim rights act will surely advance our movement.  Either it
will prove to be totally effective or it will prove at the Federal level what has been demonstrated
repeatedly in the states – that statutes alone do not insure that all victims have their rights
recognized and enforced all the time."  News Release dated Nov. 1, 2004 (available at
http://www.nvcap.org).

information for one month to allow any party or victim (including any victim who wishes to

proceed under a pseudonym) to object to this order or to suggest an alternate procedure.

     **SO ORDERED.**

Dated: Central Islip, New York
     April 29, 2005

                                /s/ James Orenstein
                                JAMES ORENSTEIN
                                U.S. Magistrate Judge